# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 97-2718/2739
_____

| | | |
|---|---|---|
| Val-U Construction Company of<br>South Dakota, | * <br> * <br> * | |
| Appellee/Cross-Appellant, | * <br> * | |
| | * <br> * <br> * | Appeal from the United States<br>District Court for the<br>District of South Dakota. |
| v. | * <br> * | |
| Rosebud Sioux Tribe and the<br>United States for the use and<br>benefit of the Rosebud Sioux Tribe, | * <br> * <br> * <br> * | |
| Appellants/ Cross-Appellees. | * | |

_____

Submitted: March 11, 1998
Filed: June 9, 1998

_____

Before BEAM and HEANEY, Circuit Judges, and WATERS,[1] District Judge.

_____

WATERS, District Judge.

_____

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

The Rosebud Sioux Tribe (the "Tribe") appeals the district court's[2] entry of summary judgment in favor of Val-U Construction Company of South Dakota ("Val-U") on the issue of whether an award Val-U obtained from an arbitration hearing, in which the Tribe chose not to participate, is valid. Val-U cross-appeals the district court's denial of its motion to amend the judgment to include prejudgment interest from the date of the arbitration award to the entry of judgment.

## I. BACKGROUND

In July of 1989, the Tribe and Val-U entered into a contract for the construction of housing units on the Rosebud Sioux Indian Reservation. The contract contained an arbitration provision. Problems arose during the performance of the contract and the Tribe terminated the contract in September of 1990. Val-U demanded arbitration of the contract termination, but the Tribe refused to participate in the arbitration proceedings. Instead, the Tribe filed a lawsuit in federal court. The following is an outline of the factual and procedural history relevant to the court's opinion in this case.

| | |
|---|---|
| October 26, 1990 | Val-U filed a demand for arbitration of the contract termination with the American Arbitration Association ("AAA"). |
| December 11, 1990 | The Tribe notified the AAA that it would not participate in arbitration based on principles of sovereign immunity. |
| March 5, 1991 | The AAA advised the Tribe that a hearing in the matter would begin on May 6, 1997. |

---

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

April 9, 1991            The Tribe filed suit in the United States District Court for the District of South Dakota against Val-U claiming, among other things, breach of contract.

May 3, 1991            Val-U filed an answer and pleaded as an affirmative defense the contract's arbitration clause and, later, collateral estoppel based on the subsequent arbitration award in its favor. Val-U also asserted various counterclaims, including breach of contract. (The district court did not compel arbitration of the Tribe's claims against Val-U, or stay the arbitration of Val-U's claims against the Tribe).

May 6, 1991            The AAA held an arbitration hearing and Val-U presented its case. The Tribe was not represented at the hearing.

May 23, 1991            The Tribe reasserted its position to the AAA that it did not believe it had to participate in arbitration based on principles of sovereign immunity.

May 29, 1991            The Tribe acknowledged receipt of the "proposed" arbitration award by the AAA and again stated its position that it was not bound by such an award under principles of sovereign immunity.

June 18, 1991            The AAA issued an award in favor of Val-U, finding the Tribe in breach of the contract and awarded Val-U $793,943.58, plus interest, fees, and costs. A copy of the award was forwarded to the Tribe on June 20, 1991.

| | |
|---|---|
| March 30, 1994 | The district court, the Honorable John B. Jones, upon the Tribe's motion for a voluntary dismissal, dismissed the Tribe's claims with prejudice, and dismissed Val-U's breach of contract claim on the basis that it was barred by the Tribe's sovereign immunity to the extent it sought recovery beyond recoupment. |
| March 16, 1995 | Val-U appealed the dismissal of its counterclaims against the Tribe. On appeal, we held that the arbitration clause waived the Tribe's sovereign immunity as to all claims under the contract. Thus, we remanded to the district court to hear Val-U's counterclaims, and to determine the validity of the arbitration award Val-U obtained against the Tribe. See Rosebud Sioux Tribe v. Val-U Const. Co. of South Dakota, Inc., 50 F.3d 560 (8th Cir. 1995). |
| March 6, 1997 | On remand, the district court, the Honorable Charles B. Kornmann, upon consideration of Val-U's motion for summary judgment, held that the doctrine of res judicata barred the Tribe from challenging the arbitration award and ordered the clerk to enter judgment in favor of Val-U in the amount of the arbitration award. |
| May 15, 1997 | The district court denied Val-U's motion to amend the judgment to include pre-judgment interest from the date of the arbitration award to the entry of judgment |

## II.  THE TRIBE'S APPEAL

The issues presented by the Tribe's appeal were decided by summary judgment. The court reviews a district court's grant of summary judgment <u>de novo</u>, and examines the record in the light most favorable to the nonmoving party.  <u>Lang v. Star Herald</u>, 107 F.3d 1308, 1311 (8th Cir.), <u>cert.</u> <u>denied</u>, 118 S. Ct. 114 (1997).  <u>See</u> <u>also</u> Fed. R. Civ. P. 56(c).

### A.

The Tribe's first argument on appeal concerns the court's previous opinion in this case on the issue of sovereign immunity.  Specifically, the Tribe asserts that both the Supreme Court and the Eighth Circuit cases have consistently held that, absent a clear and unequivocal waiver, Indian tribes possess sovereign immunity.  The Tribe further asserts that the prevailing federal law at the time that Val-U demanded arbitration was that an arbitration provision in a contract was not a clear and unequivocal waiver of sovereign immunity.  Thus, the Tribe contends that when this court held in <u>Rosebud</u>, <u>supra</u>, that the arbitration provision in the contract constituted a waiver of sovereign immunity, the decision was contrary to the prevailing federal law on what represents a waiver of sovereign immunity.  Therefore, the Tribe asserts that our decision in <u>Rosebud</u> should only be applied prospectively.

It is well established that Indian tribes posses the same common-law immunity from suit traditionally enjoyed by sovereign powers.  <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 58 (1978) (citations omitted).  The Supreme Court has stated that "[t]his aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress.  But without congressional authorization, the Indian Nations are exempt from suit."  <u>Id.</u>  (internal quotation marks and citation omitted).  Furthermore, the Supreme Court has made it clear that "a waiver of sovereign immunity cannot be

implied but must be unequivocally expressed." Id. (internal quotation marks and citations omitted).

This court has also recognized a tribe's sovereign immunity and has held that a waiver of immunity cannot be implied but must be unequivocally expressed. See Rosebud, 50 F.3d at 562; Weeks Const. Inc. v. Oglala Sioux Housing Authority, 797 F.2d 668, 670 (8th Cir. 1986). In Rosebud, we addressed the issue of whether an arbitration clause in a contract constituted a waiver of sovereign immunity. The arbitration provision reads: "[a]ll questions of dispute under this agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." Appellant's Separate Appendix at 92. We found that the language of the arbitration clause was "spare but explicit that disputes under the contract 'shall be decided by arbitration.'" Rosebud, 50 F.3d at 562. Therefore, we concluded that "the parties clearly intended a waiver of sovereign immunity . . . ." Id. We noted that "while the Supreme Court has expressed its protectiveness of tribal sovereign immunity by requiring that any waiver be explicit, it has never required the invocation of 'magic words' stating that the tribe hereby waives its sovereign immunity." Id. at 563.

The Tribe contends that our decision in Rosebud was inconsistent with our previous holding in American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe, 780 F.2d 1374 (8th Cir. 1985). In Standing Rock, we held that an Indian tribe had not waived its sovereign immunity through certain language in a promissory note. Specifically, the promissory note provided for several remedies in the event of a default by the Standing Rock Sioux Tribe, "in addition to such other and further rights and remedies provided by law." Id. at 1376. The note also awarded attorney fees in the event of a collection action and stated that the law of the District of Columbia would apply. In refusing to find an express waiver in the language of the promissory note, we stated that "Standing Rock did not explicitly consent to submit any dispute over repayment on the note to a particular forum, or to be bound by its judgment." Id.

at 1380.  We noted that the promissory note did not "expressly speak to Standing Rock's consent to suit or to waiver of immunity from suit."  Id. at 1376 (footnote omitted).  The court stated that to find an express waiver of sovereign immunity in such language "simply asks too much."  Id. at 1381.

In Rosebud, we distinguished Standing Rock by stating that unlike Standing Rock:

> the parties [in Rosebud] specifically designated an arbitral forum to settle disputes under the contract, as well as arbitration rules that explicitly provide for judicial enforcement of any arbitration award.  The parties clearly manifested their intent to resolve disputes by arbitration, and the Tribe waived its sovereign immunity with respect to any disputes under the contract.

Id. at 563.  Thus, our opinion in Rosebud was consistent with our holding in Standing Rock because in Rosebud we determined that by agreeing to arbitration, the Tribe expressly consented to submit any disputes arising under the contract to arbitration and to be bound by the arbitrator's determination.  Therefore, we did not imply a waiver of sovereign immunity as the Tribe suggests.

The Supreme Court has recently held that:

> [i]n the ordinary case, no question of retroactivity arises.  Courts are as a general matter in the business of applying settled principles and precedents of law to the disputes that come to bar. . . .  Where those principles and precedents antedate the events on which the dispute turns, the court merely applies legal rules already decided, and the litigant has no basis on which to claim exemption from those rules.  It is only when the law changes in some respect that an assertion of nonretroactivity may be entertained, the paradigm case arising when a court expressly overrules a precedent upon which the contest would otherwise be decided

differently and by which the parties may previously regulated their conduct.

James B. Beam Distilling, Co. v. Georgia, 501 U.S. 529, 534 (1991) (citation omitted).

We conclude that our decision in Rosebud was not contrary to the principles and precedents relating to waivers of tribal sovereign immunity. Moreover, our opinion in Rosebud did not overrule a previous opinion or decision of this court.[3] Indeed, we were simply applying the law at the time to the facts presented before us. The Tribe, or its counsel, simply misjudged how the court would rule in this instance. Judge Kornmann described the Tribe's course of conduct best in his opinion on this issue:

> [t]he Tribe, represented by counsel of their choosing, consciously and intentionally took a reckless and totally ill-conceived course without any substantial legal basis. The Tribe argues that the Eighth Circuit decision in this case changed existing law. That argument is rejected. There was no Eighth Circuit case directly on point. While the Tribe obviously did not correctly anticipate the appellate ruling as to sovereign immunity, they had no way of knowing or even forecasting what that decision would ultimately be. There is no dispute that the Tribe had repeated notices from the arbitrator and a great deal of time to carefully decide what to do. * * * The extremely high risk strategy used by the Tribe and their attorneys (and it is important to note that the Tribe's present attorneys had no part in such decisions) was akin to being served with process in a lawsuit and ignoring the matter, hoping that an appellate court would ultimately find lack of jurisdiction. This is inexcusable neglect.

Appellant's Addendum at 3.

---

[3]The Tribe asserts that our decision was contrary to Pan America Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 420 (9th Cir. 1989), where the court held that an arbitration clause in a contract does not effect a waiver of a tribe's sovereign immunity. It goes without saying, however, that the state of the law in the Ninth Circuit at the time the Tribe refused to arbitrate is not controlling precedent in this circuit.

Therefore, we hold that our opinion in <u>Rosebud</u> should be applied retroactively. As a result, the Tribe is not entitled to sovereign immunity from Val-U's breach of contract claims.

## B.

The rest of the Tribe's arguments concern the validity of the arbitration award. First, the Tribe contends that the preferred disposition of a case is on the merits and not by default.[4]  The Tribe asserts that the arbitration award should be vacated, and it should be given an opportunity to present its case because: (1) significant sums of money are involved; (2) significant facts exist that establish the Tribe has a meritorious defense against Val-U's claims; and (3) the Tribe did not participate in the arbitration proceedings based on its determination that the law at the time afforded it sovereign immunity from such a proceeding.  We have already determined that the Tribe acted unreasonably in refusing to participate in the arbitration hearing based on its belief that it possessed immunity from suit, and thus, unless the Tribe can show that, under the Federal Arbitration Act (the "FAA"), it is entitled to have the award vacated, the award should be upheld.

This court recently held that "[j]udicial review of an arbitration award is extremely limited.  Beyond the grounds for vacation provided in the FAA, an award will only be set aside where 'it is completely irrational or evidences a manifest disregard for the law.'" <u>Kiernan v. Piper Jaffray Companies, Inc.</u>, 137 F.3d 588, 594 (8th Cir. 1998) (<u>quoting</u> <u>Lee v. Chica</u>, 983 F.2d 883, 885 (8th Cir. 1993) (internal quotation marks and citations omitted)).

---

[4]We note that this case was not decided by default.  Val-U presented evidence to the arbitrator at the hearing, and the arbitrator issued an award based on the evidence submitted.  This is in accordance with Rule 30 of the Construction Industry Arbitration Rules which forbids an award to be issued solely on the default of a party.

Under the FAA, a court may vacate an arbitration award in any of the following cases: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, or in refusing to hear evidence material to the controversy, or of any other misbehavior; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.  9 U.S.C.A. § 10(a) (Supp. 1997).  Under § 12 of the FAA, a party can file a motion to "vacate, modify, or correct an award."  9 U.S.C.A. § 12 (1970).  Such a motion, however, "must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  Id.  Furthermore, we have held that a "failure to file a motion to vacate, modify, or correct within three months of either the initial award or the Clarification of Award waived any defenses to confirmation that might be asserted in a timely motion to vacate."  Domino Group, Inc. v. Charlie Parker Memorial Foundation, 985 F.2d 417, 419 (8th Cir. 1993) (citations omitted).

First, there is no evidence that the Tribe ever made any motion to the district court to vacate the arbitration award.  Second, even if the Tribe had made such a motion, the Tribe would not have been entitled to an order vacating the award.  The Tribe has not contended that Val-U obtained its arbitration award through fraud and there is no evidence of corruption in the arbitration proceedings.  In addition, the Tribe never requested that the AAA postpone the hearing until the issue of sovereign immunity was resolved.  Thus, in addition to the fact that it appears the Tribe's motion to vacate the arbitration award is clearly untimely, there are no grounds under the FAA to grant such a request.  We cannot say that the arbitration award is completely irrational or evidences a manifest disregard for the law.

The Tribe relies on the case of Food Handlers Local 425, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO  v. Pluss Poultry, Inc., 260 F.2d 835, 837 (8th Cir. 1958), where the court held that an arbitration clause must

–10–

contain a provision that permits one party to initiate and prosecute to a conclusion an arbitration proceeding without the other party's participation. Otherwise, the court held, an award obtained under such circumstances is void and unenforceable.

In Food Handlers, there was a collective bargaining agreement providing that disputes arising between the employer and the union could be submitted by either party to the Board of Arbitrators. The arbitration provisions in the agreement provided that the Board of Arbitrators would consist of a three member panel, one member to be appointed by each party, and a third member to be chosen by the first two members. A dispute arose and the union demanded arbitration, however, the employer contended that the disputes were not arbitrable, and refused to cooperate in the arbitration proceedings. The district court held that the arbitration award was void and unenforceable and this court affirmed. In doing so, the court held that the employer never consented to arbitration of disputes where it took no part in the selection of any arbitrator.

We believe that Food Handlers is easily distinguished. In this case, the parties agreed that "[a]ll questions of dispute under this agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." Appellant's Separate Appendix at 92. Rule 30 of the Construction Industry Arbitration Rules of the American Arbitration Association states that:

> [u]nless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

Therefore, unlike the employer in Food Handlers, the Tribe agreed, via the arbitration clause, that an arbitration hearing may proceed in its absence as long as it was given notice of the hearing and an opportunity to obtain a postponement of the hearing. Val-U asserts that it presented evidence before the arbitrator and based on the evidence offered, the arbitrator entered a final award. In our view, the Tribe agreed to this possibility and is undeserving of an order vacating the award.[5]

## C.

The Tribe contends that because Val-U never sought to compel the Tribe to participate in the arbitration proceedings, the Tribe was not obligated to participate in the hearing. The Tribe asserts that Val-U clearly had this mechanism available to them, and because they did not use it, the Tribe had no duty to participate at the arbitration hearing.

Section 4 of the FAA states that: "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration

---

[5]We note that the Tribe asserts in its brief that the contract with Val-U was never approved by the Bureau of Indian Affairs, and thus, the validity of the contract and the arbitration provision is at issue. See 25 U.S.C.A. § 81 (1983) (Secretary of the Interior and the Commissioner of Indian Affairs must approve all contracts made with Indians or Indian tribes "relative to their lands."). Furthermore, the Tribe indicates that it may have been "duped into making such agreement." Brief of Appellant at 26 n. 6. We find the Tribe's arguments totally without merit. The court has reviewed each of the letters written by the Tribe's counsel at the time, Mason D. Morisset, and at no time did Mr. Morisset even suggest that the agreement was invalid, or that the Tribe was fraudulently induced into signing it. In addition, he did not assert that the arbitration clause was not part of the agreement. Moreover, the Tribe did not assert these arguments in the district court, and thus, we will not address them here.

proceed in the manner provided for in such agreement." 9 U.S.C.A. § 4 (1970) (emphasis added). Other circuits have held that the procedural requirements of § 4 are permissive, not mandatory. See Bernstein Seawell & Kove v. Bosarge, 813 F.2d 726, 733 (5th Cir. 1987); Kentucky River Mills v. Jackson, 206 F.2d 111, 120 (6th Cir. 1953).

We believe that § 4 of the FAA is clearly permissive. As such, Val-U was not required to petition the district court for an order compelling the Tribe to participate in the arbitration proceedings.

**D.**

The Tribe asserts that at the time that the arbitration hearing took place, this lawsuit was pending in federal district court. Thus, the Tribe contends that Val-U was required to move the district court to stay the federal lawsuit pending the outcome of the arbitration proceedings.

Section 3 of the FAA states that:

[i]f any suit or proceeding is brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing that the applicant for the stay is not in default proceeding with such arbitration.

9 U.S.C.A. § 3 (1970).

Section § 3, like § 4, is permissive, not mandatory.  Nowhere in the statute does it require either party to file a motion to stay.  Thus, Val-U was not required to file a motion in district court to stay the lawsuit pending the outcome of the arbitration hearing.

**E.**

The Tribe contends that while Val-U secured an arbitration award in this case in June 1991, it has never taken any steps to confirm the award.  The Tribe asserts that even if its motion for summary judgment in this case is considered as an effort to confirm its judgment, that motion was not made until August 10, 1993, more than two years after the award was entered.  The Tribe asserts that Val-U should be estopped from pursuing enforcement of the arbitration award.

Section 9 of the FAA states that:

> [i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C.A. § 9 (1970).

The Fourth Circuit has held that the language of § 9 is permissive, that the one-year period is not a statute of limitations, and that a party may apply for confirmation of an award beyond the one-year period.  Sverdrup Corp. v. WHC Constructors, Inc., 989 F.2d 148 (4th Cir. 1993).  The court stated that if it construed § 9 to be a statute of limitations, the court "would merely encourage, at the expense of judicial economy,

–14–

the use of another analogous method of enforcing awards." Id. at 155. But cf., In re Consolidated Rail Corp., 867 F. Supp. 25 (D.D.C. 1994) (holding that a party may apply for confirmation only within the one year period).

We hold that § 9 is a permissive statute and does not require that a party file for confirmation within one year. If Congress intended for the one year period to be a statute of limitations, then it could have used the word "must" or "shall" in place of "may" in the language of the statute. Thus, Val-U may seek confirmation of its award more than one year after the award was issued.

### F.

The Tribe asserts that the lower court erred when it determined that the unconfirmed arbitration award was res judicata and entered summary judgment in Val-U's favor. The Tribe cites Gruntal & Co. v. Steinberg, 854 F. Supp. 324 (D.N.J. 1994), where the court held that "[a]bsent judicial confirmation, an arbitration award will not result in a final judgment and cannot, therefore, have preclusive effect on subsequent litigation." Id. at 337 (internal quotation marks, footnote and citation omitted).

Val-U asserts that the award is a final judgment on the merits. Val-U contends that the fact that the award was not confirmed is irrelevant because given the summary nature of a confirmation proceeding, and the limited review a court of appeals has in such cases, confirmation would have easily been obtained. Thus, Val-U asserts that having the award confirmed would have changed nothing in this case and the Tribe should not be able to avoid the doctrine of res judicata on this issue.

The doctrine of res judicata bars a party from asserting a claim if three requirements are met: "(1) the prior judgment was entered by a court of competent jurisdiction; (2) the decision was a final judgment on the merits; and (3) the same cause

of action and the same parties or their privies were involved in both cases." United States v. Brekke, 97 F.3d 1043, 1047 (8th Cir. 1996) (citations omitted). The Tribe asserts that in each of the cases where this court determined that an arbitrator's award constituted a final judgment on the merits, both parties had been a part of the arbitration proceedings and had been able to argue their case on the merits. The Tribe contends that it would be unfair in this case to award Val-U judgment against the Tribe when the Tribe has not had the opportunity to present its claims and defenses.

The court, although not addressing "unconfirmed awards," has held that an arbitrator's award constitutes a final judgment for the purposes of collateral estoppel. See American Federation of Television & Radio Artists Heath & Retirement Funds v. WCCO Televison, Inc., 934 F.2d 987, 991 (8th Cir. 1991). In holding that the award was a final judgment, the court noted that the parties "had a full and fair opportunity to litigate the issue in that proceeding." Id.

In Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1169 (8th Cir. 1989), however, we stated that for purposes of collateral estoppel "[t]he fact that the award in the present case was not confirmed by a court and was modified by a subsequent settlement agreement does not vitiate the finality of the award." The Second Circuit has expressly held that, under New York law, an unconfirmed arbitrator's award can furnish the basis for res judicata. Jacobson v. Fireman's Fund. Ins. Co., 111 F.3d 261, 267-68 (2nd Cir. 1997).[6]

---

[6]We note that the Second Circuit in Jacobson declined to follow its earlier opinion in Leddy v. Standard Drywall, Inc., 875 F.2d 383, 385 (2nd Cir. 1989), where it held that an unconfirmed arbitration award could not be given preclusive effect. Leddy was one of the cases relied upon by the district court in Gruntal, supra.

–16–

We conclude that the Tribe's breach of contract claims are barred by the arbitration award. The Tribe was given a full and fair opportunity to litigate the issues at the arbitration hearing, but chose not to participate in the hearing, knowing full well that an award would be entered against it by the arbitrator. It is clear that had Val-U filed for confirmation of its award prior to filing its motion for summary judgment, the district court would have confirmed the award because under the FAA, confirmation of an arbitration award is mandatory unless the award is vacated, modified or corrected. Indeed, we have stated that "[a]bsent a timely motion to vacate, in most cases the confirmation of an arbitration award is a summary proceeding that makes what is already a final arbitration award a judgment of the court." Domino Group, Inc., 985 F.2d at 420 (internal quotation marks and citation omitted). It appears from the record that the district court simply confirmed the arbitration award at the same time that it granted summary judgment in favor of Val-U. Therefore, we hold that the principles of res judicata and collateral estoppel apply to the arbitration award in this case.

## II. VAL-U'S CROSS-APPEAL

The issue presented on cross-appeal was not decided by the summary judgment motion, but was decided by the court on Val-U's motion to amend the judgment. A decision to deny prejudgment interest is reviewed on appeal under the abuse of discretion standard. Smith v. World Ins. Co., 38 F.3d 1456, 1467 (8th Cir. 1994).

Val-U asserts that it is entitled to prejudgment interest from the date of the arbitration award to the date of the entry of judgment. Val-U contends that in this case, judgment was awarded to Val-U in 1991, that the Tribe has had the use and benefit of its money for over six years, and that there are no exceptional circumstances that would make such an award inequitable.

This court has held that:

> [a]s a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due.

Stroh Container Co. v. Delphi Ind., Inc., 783 F.2d 743, 752 (8th Cir. 1986) (citations omitted). In addition, the court stated that "awarding prejudgment interest is intended to serve at least two purposes: to compensate prevailing parties for the true costs of money damages incurred, and, where liability and the amount of damages are fairly certain, to promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation." Id. The court held that prejudgment interest should be awarded "unless exceptional or unusual circumstances exist making the award of interest inequitable." Id. (citations omitted).

The district court, relying on our opinion in Stroh, found that prejudgment interest would be inequitable in this case because Val-U was dilatory in getting the award confirmed, did not seek a stay of the proceedings, and did not seek an order to compel the Tribe to participate. The district court determined that Val-U should not be rewarded for such delays. We cannot say that the district judge abused his discretion in not awarding pre-judgment interest in this case.

### III. CONCLUSION

The district court's entry of summary judgment in favor of Val-U is affirmed in full. The district court's denial of Val-U's motion to amend the judgment is also affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.